[No. 21768. Department Two. July 1, 1929.]

CLAUDE BAILEY, *Respondent*, v. BERNICE L. BAILEY, *Appellant*, A. E. PIERCE, *Defendant*.[1]

*Edwin H. Flick* and *Stanley Kent*, for appellant.

*Revelle, McKinney & Sherwood*, for respondent.

MAIN, J.—The plaintiff, Claude Bailey, brought this action for the possession of certain corporate stock which was then held by the defendant A. E. Pierce. The defendant Bernice L. Bailey answered the complaint and, by way of cross-complaint, sought to keep the stock impounded in the possession of Pierce. After the action was instituted, Pierce disclaimed any interest in the stock, and deposited the same in the registry of the court. The action was tried to the court without a jury. The Carlton Apartments Association, a corporation, which had been made a party plaintiff, was dismissed out of the action. A judgment was entered directing that the stock be delivered to the plaintiff Claude Bailey, and that the cross-com-

[1]Reported in 278 Pac. 691.

plaint be dismissed, from which judgment Bernice L. Bailey appeals.

Claude Bailey, the respondent, and Bernice L. Bailey, the appellant, are husband and wife, and they owned an apartment house in Seattle. A. E. Pierce was vice-president and secretary of the Home Savings and Loan Association, and president of the Washington Loan Securities Company. The latter corporation held a mortgage upon the apartment house above mentioned. Mr. and Mrs. Bailey organized the Carlton Apartments Association, a corporation, with a capital stock of $50,000, divided into five hundred shares of the par value of $100 per share. After organizing the corporation, they conveyed the apartment house owned by them to it. In addition to the mortgage held by the Washington Loan Securities Company, there were some other obligations. After the corporation was organized, one hundred and fifty shares of the stock were issued in the name of Mr. Bailey, and three hundred and fifty shares in the name of Mrs. Bailey. At the time the stock was issued, Mr. and Mrs. Bailey entered into a written agreement which recited:

"(1) The parties hereto have formed a corporation under name of Carlton Apartments, Inc., capitalized at $50,000. $35,000 of the capital stock is owned by Bernice Bailey and $15,000 thereof by C. R. Bailey.

"(2) All the property of the parties hereto has been conveyed to said corporation, subject to existing mortgages and liens thereon, and all the capital stock has been pledged to Home Savings & Loan Association, in Seattle, as additional security for the indebtedness of the parties hereto."

There are other things in the agreement which are not here material.

It will be noted that, in the excerpts quoted, it is recited that all the capital stock has been pledged as additional security to the Home Savings and Loan As-

sociation. It probably was the intention to say the Washington Loan Securities Company, but this is not now material.

After the agreement was entered into, Mr. Bailey delivered all the stock to A. E. Pierce, stating that he desired it held as additional collateral security. Some time after this, the apartment house was refinanced, the Washington Loan Securities Company making an additional loan to take care of certain obligations. Some time subsequent to this, Mr. Bailey demanded of Pierce the return of his one hundred and fifty shares of the capital stock. It was not returned to him, as Pierce testifies, because Mrs. Bailey told him not to do so.

Covering the matter of the deposit of the stock with him, and its status, Pierce testified as follows:

"The stock certificate to which you call my attention was handed me by Mr. Bailey. He said he wished to leave it as additional security—that was prior to the refinancing—in August, 1927. He left certificates with me for the total capitalization as additional security for the indebtedness. I held all the stock as collateral. The then existing indebtedness was merged into the last financing. The new indebtedness included the old. Mr. Bailey turned all the stock over to me. I think he demanded it back. I did not return it to him because Mrs. Bailey had told me not to do so. Otherwise I would have returned it to him. I did not regard the stock as collateral."

On cross-examination, he further testified as follows:

"Mr. Bailey brought the stock in and said he wished to leave it as additional security. I had not asked for it in any way, and told him so. He explained there were creditors pressing, that they had incorporated, and for protection wished to turn in the stock as additional security; and I accepted it. It was turned in to me personally, and I so receipted for it."

■ Whatever the status of the stock may have been when it was first delivered by Mr. Bailey to Pierce, the above testimony makes it plain that, at the time its return was demanded, it was not being held as collateral. The stock not being held as collateral at the time the demand was made, Mr. Bailey had the right to have returned to him the one hundred and fifty shares which had been issued in his name. The evidence will not sustain a holding that Mr. and Mrs. Bailey had entered into a binding agreement for a specific time to impound the stock of the corporation.

The judgment will be affirmed.

MILLARD, PARKER, FRENCH, and HOLCOMB, JJ., concur.